# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MOHAMMED CAMARA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:18-CV-06008-DGK |
| | ) |
| JERRY GALLOWAY, | ) |
| Caldwell County, Mo. Sheriff and | ) |
| | ) |
| JEFFERSON B. SESSIONS, III, | ) |
| Attorney General, | ) |
| | ) |
| Respondents. | ) |

## ORDER DENYING MOTION TO DISMISS

Mohammed Camara petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2441, seeking release from the custody of United States Department of Homeland Security officials (Doc. 1). The Government opposes Petitioner's request and moves to dismiss his petition for lack of jurisdiction or for failure to state a claim (Doc. 3).[1] For the following reasons, the Government's motion is denied and Petitioner is granted an evidentiary hearing.

## Background

Camara is a native and citizen of Sierra Leone. Camara entered the United States using fraudulent identification documents on June 1, 2002. On March 13, 2008, an immigration judge ordered Camara removed from the United States because he missed a hearing in New York in 2006.[2] On June 21, 2010, Camara was taken into custody by Immigration and Customs Enforcement ("ICE") and later on August 8, 2010, Camara was interviewed by the embassy of

---

[1] Only Defendant Sessions responded to the petition and argues Defendant Galloway is not a necessary party. Camara responds that Galloway is a proper party to this lawsuit.

[2] The parties do not fully explain the details regarding the nature of the 2006 New York hearing or what led to his referral for removal.

Sierra Leone. Sierra Leone decided it would not issue Camara a travel document, which is required for repatriation. Due to ICE's inability to obtain travel documents, on September 20, 2010, Camara was released from custody pursuant to an Order of Supervision.

Camara has been under order of removal for approximately ten years. From the time of his release in 2010 until his re-arrest in 2017, Camara was under an order of supervision which required him to report regularly to ICE officials. Camara complied with the reporting requirements. Camara alleges he has cooperated with ICE's efforts to remove him, including communicating with the Sierra Leone embassy and completing the necessary travel document forms.

On or around June 16, 2017,[3] Camara was taken into custody by ICE at his place of employment. On June 20, 2017, ICE submitted a new request to the Sierra Leone embassy for travel documents for Camara.

Camara filed this petition on January 25, 2018, alleging that he has been detained in excess of the 90-day limit under 8 U.S.C. § 1231(a)(3), and the presumptively reasonable 180-day timeframe under *Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding detention in excess of 180 days may be unconstitutional if there is a showing that there is no significant likelihood of removal in the reasonably foreseeable future).

On February 20, 2018, the Sierra Leone embassy again interviewed Camara, this time by video conference. Defendant alleges that on March 6, 2018, an unknown person from the Sierra Leone embassy told ICE officials that they would be willing to issue travel documents for Camara, but required a money order. The Government alleges ICE is currently completing this requirement and that once Camara's travel document is received, he will be removed within ten

---

[3] In Camara's petition he only alleges he was arrested in June 2017. In his response to the Government's motion he asserts he was arrested on June 13, 2017.

to fifteen days.

The parties agree that in recent years, repatriating aliens to Sierra Leone has been difficult. Nationwide, ICE has had extreme difficulty in securing travel documents for those ordered removed to Sierra Leone. Although Sierra Leone is bound by an international treaty to help facilitate the removal of its nationals, there are often disputes as to whether the individual is in fact a citizen of Sierra Leone. Even when there is no dispute, Sierra Leone regularly refuses to comply with such requests. In this case, the Government notes Sierra Leone has not always been prompt or consistent in responding to ICE's requests for travel documents for Camara.

The parties dispute whether Camara has ever been charged with an offense in this country. The Government contends Camara was detained in Johnson County, Kansas, for an unspecified charge. Camara states he was cited for a traffic offense in 2010 and failed to appear at a hearing because he was in ICE's custody. Camara states once he provided paperwork of his detainment, his case was dismissed. Camara also provides weak evidence, a printout from the Johnson County court's website, that outside the 2010 traffic offense, he has never been charged with a crime in Johnson County, Kansas. The Government only alleges that his detainment in 2017 occurred shortly after his release from the Johnson County, Kansas Sheriff's office after serving time for local charges.

Defendant moves to dismiss Camara's petition because it argues the Court lacks jurisdiction or alternatively, because Camara's petition fails to state a claim for relief. The Government included an affidavit in its motion to dismiss and Camara included other attachments in his response.[4]

---

[4] The Court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged. *Osborn v. United States*, 918 F.2d 724, 728 n.4 (8th Cir. 1990).

**Standard**

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under 28 U.S.C. § 2241 is a proper method for challenging the lawfulness of continued detention by immigration authorities pending removal of an alien. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

When considering a motion to dismiss, the court assumes the factual allegations of a complaint are true and construes the facts in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). To avoid dismissal, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Discussion**

Section 1231, governs detention of aliens who have been "ordered removed." 8 U.S.C. § 1231(a). Section 1231(a)(1)(A) defines a 90–day "removal period" during which the government, under § 1231(a)(2), must detain any alien ordered removed and, under § 1231(a)(1)(A), must remove that alien. Because the government may, for various reasons, be unable to remove an alien within 90 days of when he is ordered removed, § 1231 provides three different ways in which an alien's detention can be lawfully extended beyond the 90–day removal period. The subsection that applies in this case is (a)(6), which states in relevant part "An alien ordered removed . . . who has been determined by the Attorney General *to be a risk to*

*the community or unlikely to comply with the order of removal*, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6) (emphasis added).

Under *Zadvydas*, the Government can detain an alien ordered removed for the initial 90 days allowed § 1231(a)(2), and thereafter only for a period reasonably necessary to secure the alien's removal. *Id.* at 682. It is presumptively reasonable for the Government to detain the alien for six months or less, but after that time the Government must show "a significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

### I. The motion to dismiss is denied.

The Government first argues Camara's petition is premature because he had not been detained in excess of a presumptively reasonable time when he filed this case. The Government's calculation is based on a 90-day detention time, beginning on June 16, 2017, and then an additional six month detention under *Zadvydas*. Using the Government's rationale and detention start date of June 16, 2017, Camara would not have been detained in excess of a presumptively reasonable time until March 16, 2018.

However, *Zadvydas* did not define the presumptively reasonable time as an *additional* six months of detainment after the 90-days provided for in the statute. Rather, *Zadvydas* found that detainment up to six months, *in total*, was presumptively reasonable. *Zadvydas*, 533 U.S. at 701. Appling the holding in *Zadvydas*, Camara's claim that his detainment became unreasonable six months after he was taken into custody on either June 13 or 16, 2017, which is, at the latest, December 16, 2017. Accordingly, the Court finds his petition was not filed prematurely.

Second, the Government argues Camara has not stated a claim because he cannot demonstrate there is no significant likelihood of removal in the foreseeable future. Under the

*Zadvydas* removal analysis, a petitioner must "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before the Government is required to respond by showing why that belief is unfounded. *Id.* at 701. Camara states that his removal is unlikely given the undisputed difficulty in securing travel documents from Sierra Leone, and that his removal and request for travel documents have been pending for ten years without success. Camara also states he has fully complied with ICE since 2010, he has no criminal history, and he has complied with the terms of his supervised release for seven years. Finally, Camara argues even assuming that Defendant's hearsay evidence that Sierra Leone plans to issue him a travel document is true, there is no indication of when this will occur.

Reviewing only the facts in Camara's complaint, the Court finds he has stated a claim for relief. He has asserted sufficient reasons, that if true, state a claim that there is no significant likelihood of removal in the foreseeable future. Defendant's argument that they are hopeful to remove Camara ten to fifteen days after they receive Camara's travel documents, does not demonstrate how Camara's belief that he could be held for an unconstitutional period of time is unfounded. Accordingly, Defendant's motion to dismiss for failing to state a claim is denied.

**II.     The Court will hold an evidentiary hearing on Camara's petition.**

Citing 8 U.S.C. § 1231(a)(6) and *Zadvydas*, Camara argues that he must be released from custody pending his removal because he has been detained for longer than six months and the Government has not shown that it is significantly likely to remove him in the reasonably foreseeable future.

As stated above, immigration officials may detain an alien beyond the removal period for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* The rule of *Zadvydas* is that an alien challenging his confinement beyond six months from the

beginning of the removal period bears the burden of "provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The Government then bears the burden of "respond[ing] with evidence sufficient to rebut that showing." *Id.* The more prolonged the alien's detention, the lower his burden, because "what counts as the 'reasonably foreseeable future'" shrinks as the alien's detention drags on. *Id.*

However, *Zadvydas* did not establish a per se requirement that aliens must be released after six months, only that the Government must show that there is a significant likelihood of removal in the reasonably foreseeable future. *Id.* Petitioner does not have the right to prompt removal simply because six months have lapsed since his detention. *See Cisse v. Baniek*, No. 4:11-CV-00242-JAJ, 2011 WL 3799026, at *5 (S.D. Iowa Aug. 5, 2011).

Based on the facts in this case, the Court cannot determine whether Camara's constitutional rights have been violated with his continued detainment. Portions of Camara's evidence that there is no significant likelihood of removal in the foreseeable future is disputed by the Government. Additionally, if the Court finds Camara has met his burden, the Government is permitted to submit evidence rebutting that showing.

Additionally, in order to determine whether the Government can continue to detain Camara under § 1231(a)(6), there must be evidence supporting a finding that he is "a risk to the community or unlikely to comply with the order of removal." At this juncture, the Government has not proffered any such evidence.

Several pertinent and likely dispositive facts are in dispute in this case, such as Camara's criminal history, evidence that Sierra Leone agreed to issue a travel document, and that Camara is unlikely to voluntarily comply with his order of removal. These disputes necessitate an evidentiary hearing to facilitate disposition of Camara's petition for habeas relief. *Shelton v.*

*Ciccone*, 578 F.2d 1241 (1978) ("When the facts alleged in a habeas petition would justify relief if true, or when a factual dispute arises as to whether or not a constitutional right is being denied, the District Court must grant an evidentiary hearing."). Thus, the Court ORDERS an evidentiary hearing in this case.

**Conclusion**

For the reasons discussed above, Defendant's motion to dismiss (Doc. 3) is DENIED. Petitioner is granted an evidentiary hearing on his habeas petition, which will be set by a subsequent order.

**IT IS SO ORDERED.**

Date:  March 29, 2018   /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT